## Disposition of Fines Under Game Law

MARGIOTTI, Attorney General, January 6, 1936.—This department is in receipt of your request to be advised concerning a difference of opinion that seems to have arisen between the Department of Revenue, the Auditor General's Department and your commission relative to the several amounts to be deposited in the game fund when the defendant convicted of a violation of The Game Law of May 24, 1923, P. L. 359, does not pay the total costs and fine involved.

You cite as an example a case arising in Lawrence County where a defendant was convicted before a justice of the peace for hunting without a license and sentenced to pay a fine of $25 and costs, in the amount of $4.50. The justice of the peace was able to collect only $8 from the defendant, from which he deducted the costs of $4.50, remitting the balance to the game commission to apply on the fine, and the defendant presumably was committed to jail for the balance of his sentence.

You state further that the representatives of the Auditor General's office, who have audited the books of the justice of the peace, have charged him with the additional sum of $3.03, to be paid into the game fund, claiming by reason of an opinion of this department that the Commonwealth is entitled to such proportion of the amount collected as the amount of the fine bears to the total of fine and costs.

You request to be enlightened as to this opinion and for a review of the subject, because of the custom of your commission to promote coöperation between the justices of the peace or aldermen by permitting them to collect

the full amount of their costs, in view of section 1114 of The Game Law, supra. We will do so.

Ordinarily, it is the duty of the justice of the peace or alderman imposing the fine to insist upon payment of the fine, the entry of security therefor, or commitment of the defendant to jail in default of payment thereof. However, the Act of May 17, 1917, P. L. 199, 19 PS §953, empowers all "sentencing authorities" to accept payment of fine or costs in instalments. That act reads as follows:

"Section 1. Be it enacted, &c., That any person sentenced to pay a fine or to pay the costs of any criminal proceeding against him, either in addition to or without a term of imprisonment, under any act of Assembly or municipal or borough ordinance, may, in the discretion of the sentencing authority, be given leave to pay such fine or costs by instalments.

"Section 2. In giving leave under the foregoing section, the sentencing authority shall fix the amount of each instalment and the dates of payment; but no order giving such leave shall prescribe a period longer than twelve months for the completion of payment of the entire fine or costs.

"Section 3. Upon default in payment of any one instalment, under any such order, the entire unpaid balance of the fine or costs shall at once become due and payable.

"Section 4. An order under section one of this act, giving leave to pay a fine or costs by instalments, shall not bar the sentencing authority from issuing a warrant of commitment against the defendant, but the execution of such warrant shall be stayed until default occurs in the payment of any instalment.

"Section 5. All acts and parts of acts inconsistent with this act are hereby repealed."

It will be seen that the disjunctive "or" is used in this act, but Judge Hargest, then Deputy Attorney General, on January 13, 1919, in Payment of Fines and Costs, 28 Dist. R. 406, very properly construed the word "or" as

meaning "and". In the particular case then under consideration by him, he ruled that the alderman was authorized to permit the payment of both costs and fines in instalments under this act. With that interpretation we agree, but in doing so we point out that the act is to be read as authorizing the justice of the peace to do one of three things, i. e., to permit (1) the fines or (2) the costs or (3) both to be paid in instalments. In the particular case under consideration by Judge Hargest, the alderman accepted instalments for both fines and costs. Apparently the instalments were not separated into instalment payments on account of fine and instalment payments on account of costs. After the payment on three different occasions of sums aggregating $11 the defendant disappeared. The alderman then deducted all of his costs from the amount paid and remitted the balance to the Commissioner of Fisheries. The question before Judge Hargest was the propriety of such action, and he came to the following conclusion:

*"The terms of the sentence entered by the alderman in this particular case* indicate that he granted leave to pay by instalments not only the amount of the fine, but the costs of the prosecution. This being the case, the alderman is without authority to deduct his whole costs from any one or more instalments. He is limited in his deductions to a proportionate part of his costs only, and you are, therefore, accordingly advised." (Italics ours.)

You ask us to consider in conjunction with this opinion section 1114 of The Game Law, supra, which reads as follows:

"Disposition of Seized Property When Defendant Convicted.—When a defendant is convicted of violating any of the laws relating to game or other wild birds or wild animals, and pays the fine and costs imposed, all guns, traps, boats, decoys, dogs, and other shooting or hunting paraphernalia seized in connection with his arrest shall, if the use of the same is not forbidden by this act, be returned to the defendant, except in the case of the con-

viction of any unnaturalized foreign-born person; and in case the fine and costs are not so paid in full, all property other than illegal devices so seized shall be sold at public auction in such manner and subject to such conditions as the board shall direct. The cost of any such sale shall be part of the costs of prosecution. Any fund arising from any such sale shall be applied, first to the cost of the sale, second to the payment of costs of prosecution, and third to the payment of the fine imposed. The remainder, if any, shall be returned to the owner of the property thus seized."

This provision, in our judgment, does not apply to the situation under discussion unless there are additional facts not stated in your letter, which would show that some property of the convicted defendant was seized and sold. If so, of course, from the proceeds of such confiscated property the justice of the peace would be entitled to be paid his costs before any application to the fine could be made. But if there was no property of the defendant in this particular case seized and sold, then the case comes within the general rule relating to all cases where fines and costs are sought to be paid in instalments under the Act of May 17, 1917, supra. The rule laid down by Judge Hargest in the above opinion is only to be applied, however, where the alderman fails to provide separate instalment schedules of fines and costs. By this we mean that we see no reason why the alderman, under the authority of the act, cannot order that the defendant must pay the costs in full first and thereafter pay the fine in instalments, or the alderman may fix the amount of the fine instalments and the amount of costs instalments, and when so fixed apply the money received accordingly. Section 2 of the Act of May 17, 1917, supra, gives him a wide latitude in fixing the amount of each instalment and the dates of payment, so long as he does not spread them beyond the 12-month limit fixed by the act. But the alderman must fix separate instalment schedules for fines and costs at the time he exercises his authority under the

Act of May 17, 1917, supra. If he fails to do so, and accepts lump-sum instalments, they must be apportioned as held by Judge Hargest's opinion.

We may further say in preparing this opinion we examined former Deputy Attorney General Moss' opinion, Fines Under Vehicle Code of 1929, 20 D. & C. 28, and his explanatory letter to Auditor General Baldwin under date of April 2, 1934, and do not find it inconsistent with these views.     From Frederic Ray, Harrisburg.